SRD/COG USAO#2021R00121

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.** RDB-22-335 |
| | * | |
| **v.** | * | |
| | * | **(Wire Fraud, 18 U.S.C. § 1343)** |
| **MEDARD ULYSSE** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| | * | |
| | * | |

**\*\*\*\*\*\***

## INFORMATION

## COUNTS ONE ~~AND TWO~~
### (Wire Fraud)

The United States Attorney for the District of Maryland charges that:

### Introduction

At all times relevant to this Information:

1.      Defendant **MEDARD ULYSSE** was a resident of Miami, Florida.

### Background on Maryland Unemployment Insurance

2.      Unemployment Insurance (UI) was a joint state and federal program that provided monetary benefits to eligible beneficiaries.  UI payments were intended to provide temporary financial assistance to lawful workers who were unemployed through no fault of their own. Beginning in or around March 2020, in response to the COVID-19 pandemic, several federal programs expanded UI eligibility and increased UI benefits, including the Pandemic Unemployment Assistance Program (PUA), Federal Pandemic Unemployment Compensation (FPUC), and the Lost Wages Assistance Program (LWAP).

3.      In Maryland, a former employee of a business who has lost his or her job can

contact the Maryland Department of Labor ("MD DOL") and submit a claim for unemployment insurance ("UI") benefits. Claims for UI benefits are commonly submitted electronically through the use of the Internet and Internet-capable computers or other electronic devices. If the former employee meets certain requirements, including having received sufficient wages prior to separation, they become eligible to receive UI benefits.

4.    Prior to April 2021, if MD DOL approved a UI claim, Bank of America ("BOA"), pursuant to a contract with MD DOL, would create and mail a BOA Prepaid VISA debit card with the claimant's name on it, to the claimant based upon information received from MD DOL. MD DOL would subsequently authorize the electronic application of UI benefits to the debit card and continue to do so on a periodic basis if the claimant continued to file for benefits.

### The Scheme to Defraud

5.    From July 2020 through November 2020, in the District of Maryland and elsewhere, the defendant, **MEDARD ULYSSE** devised and execute a scheme to obtain unemployment benefits and other property by means of false and fraudulent pretenses, representations and promises.

6.    ULYSSE obtained and attempted to obtain money, merchandise, and other property by submitting false applications in the names of identity theft victims claiming unemployment benefits to which ULYSSE and others were not entitled. ULYSSE submitted these fraudulent claims for unemployment benefits through the Internet to the Maryland Department of Labor ("MD DOL"), the California Employment Development Department (CA EDD), and other state workforce agencies. These fraudulent applications listed individual victims' names, social security numbers, and dates of birth. MD DOL and other state workforce agencies disbursed benefits through debit cards issued in the names of applicants and mailed to addresses provided in the

applications. By completing and submitting false applications for benefits in the names of identity theft victims, ULYSSE caused the issuance of debit cards in the victims' names and the mailing of those cards to locations in Maryland and elsewhere, which were accessible to the ULYSSE and others.

7.    It was part of the scheme to defraud that between July 2020 and November 2020, in the District of Maryland and elsewhere, the defendant, **ULYSSE**, conducted fraudulent transactions through use of debit cards issued in the names of at least six identity theft victims and funded with unemployment compensation, including FPUC and PUA funds. Each debit card displayed a victim's name. The unemployment benefits were disbursed by MD DOL and other state workforce agencies as a result of fraudulent claims made in the victims' names by ULYSSE and others. ULYSSE was aware that real persons' identities were used to file the fraudulent unemployment claims and that the debit cards were issued in the names of real persons.

## COUNT ONE
(Wire Fraud)

8.    Paragraphs 1 through seven of this Information are hereby incorporated by reference as though fully set forth herein.

9.    On or about September 26, 2020,

### MEDARD ULYSSE

the defendant herein, for the purpose of executing and attempting to execute the scheme to defraud the Maryland DLLR of money by means of materially false and fraudulent pretenses, representations, and promises, as set forth above, did knowingly transmit and cause to be transmitted in interstate commerce by means of wire communications, certain writings, signs, signals and sounds, namely an ATM withdrawal from a Bank of America account located in

Baltimore, Maryland, in order to fraudulently obtain funds using a Visa prepaid debit card in the name of A.C.'s name.

18 U.S.C. § 1343.

## FORFEITURE ALLEGATION

The United States Attorney for the District of Maryland further alleges that:

1.      Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853(p), and 28 U.S.C. § 2461(c), in the event of the defendant's conviction on the offense charged in Count One of the Information.

### Wire Fraud Forfeiture

2.      Upon conviction of the offense set forth in Count One, the defendant,

### MEDARD ULYSSE

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the scheme to defraud, including, but not limited to, a money judgment representing the proceeds he obtained from his participation in the scheme to defraud.

### Substitute Assets

3.      If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

      a.   cannot be located upon the exercise of due diligence

      b.   has been transferred, sold to, or deposited, with a third party

      c.   has been placed beyond the jurisdiction of the court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property that cannot be divided without difficulty,

5

the United States shall be entitled to forfeiture of substitute property up to the value of the

forfeitable property described above, pursuant to 21 U.S.C. § 853(p), as incorporated by 28

U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C).
21 U.S.C. § 853(p).
28 U.S.C. § 2461(c).

_ELB by_ _____

Erek L. Barron
United States Attorney